Our next case for argument today is 21-1024, Shure Incorporated v. ClearOne, Inc. Mr. McCorkendale, did I say that right? That's right. Mr. McCorkendale, please proceed. Pleased to court. It's great to be back on these historic grounds. My name is Derek McCorkendale from Finnegan. We represent Shure Incorporated. For almost a year, Shure has been under an improper contempt order. It installs and expanded in conjunction. The contempt order may be reviewed under 1292A because it now adjoins with its new overbred non-infringing mounting configurations of Shure's microphone devices. You said it's been overbred for a year, but what we know from the record, I think, is the latest is the district court judge has not imposed anything yet, and it's ordered discovery. Is the discovery ongoing? Are you set to go to trial anytime? We're just talking preliminary injunction here. Can you tell us what's going on with this case? The answer, Your Honor, is yes. The contempt proceedings are ongoing as is sanctions, but the contempt order was entered on September 19th. Is the discovery still ongoing? Because that's what you were asking, the discovery, in connection with the contempt order. So is that still going on? The papers have been submitted to the judge for consideration at this point on sanctions, Your Honor. A trial is expected later this year, perhaps in the new year, I believe is the timeline, and we would seek interlocutory appeal right now of the contempt order because it installs an injunction on the face of it that bans three mounting configurations not previously implicated by the original injunction. And under the case law in energy resources, the pendency of sanctions does not ban or preclude this court from hearing the immediate injunction that has emerged. Well, my difficulty with your case, and I'll tell you, if you can't convince me I'm wrong about what I'm about to say, you have no chance of prevailing with me at least, okay? That's fair. So the original injunction said that you were prevented from manufacturing, marketing, or selling the MX-A910 in a way that would allow integrators to install it in a drop ceiling mounting configuration. There was no question the MX-A910 could be installed in other than a drop ceiling mounting configuration. Isn't that correct? It is correct. So you had a device that was capable of multiple possible installations, only one of which was covered by the patent, correct? That is correct. And you have an injunction against you that prohibits you from making, marketing, or selling the device if it allows integrators to install it in this one configuration, correct? That is where... That's the injunction, what it says on its face, if it allows integrators to install it in a drop ceiling mounting configuration, correct? Is that what the injunction says? No, Your Honor. The injunction doesn't say allows integrators to install it in a drop ceiling mounting configuration? I'm reading from the injunction, so I would think the answer would be yes. Yes, on page 118, 119? 119. 119, yes. Sure shall cease manufacturing, marketing, and selling the MX-A910 to be used in its drop ceiling mounting configuration. Including marketing and selling in a way that allows integrators to install it in a drop ceiling mounting configuration, correct? In a way that encourages or allows integrators to install it. Correct, encourages or allows are two different things. Encouraging is you suggesting they do it. Allowing is you selling a product capable of being used that way. And in fact, when you came in under bond, because this is a preliminary injunction, didn't you make it clear that this prohibited all your sales and that the bond they would have to post would be equivalent to that? Your Honor, the bond was only for the one mounting configuration. No, the bond was for all possible. You said you would discontinue the MX-A910 under the preliminary injunction. Isn't that correct? Even though that product was capable of being used in a way that Your Honor, we discontinued the MX-A910 not because we felt enjoined by it, but because we... Well, you were enjoined by it. So whether you felt enjoined by it or not is sort of irrelevant to me. You were enjoined. Your Honor, we saw that we were enjoined only under one use of that. And the MX-A910... No, you were enjoined to the extent that this product would allow integrators to install it in a drop mounting configuration. Your Honor, the after arising clean construction is what introduced the configured for, the able to be used, the capable of use, the design to allow. That logic entered into the case after the injunction. I want to go back to the beginning, though, because the injunction says what Judge Moore said. She's reading from it, okay? So it says allow. You then told the judge when you were briefing with respect to the bond that that would prevent you from selling any version of that product, right? Your Honor, we... Which is why you asked for a huge bond. Your Honor, we recognized that there was only one enjoined configuration at that time. As the clear one, they very clearly said on their face, on the face of the bond papers, that they only thought that the MX-A910 is precluded in one mounting configuration. They said, quote, The MX-A910 could continue to be sold in its other three mounting configurations. And you told the judge you're going to make sure that it was only sold in other mounting configurations, right? That's right. You specifically represented that to the judge. That was the encourage and allow part. We would ensure that that drop ceiling mounted configuration, the only one in the injunction, would no longer be sold or marketed in a way that it could do that, but the other... That allowed it or that encouraged it. Your only argument really at the contempt is that, well, we didn't really encourage it. We told them not to do it, even though we knew that it was the easier way, that the infringing way was the easier way to do it, that it was more likely that they would do it in the infringing way, all of that. The judge made findings of facts with respect to that. Your Honor, we read the injunction order to be limited to the use in the drop ceiling mounting configuration and that the marketing and selling is in the same clause as the encourage and allow. Therefore, we knew that we could only market and sell for the other three configurations and not for the infringing configuration. I don't understand. What do you think it means when he says allows integrators to install it in a dry mounted ceiling configuration? You're selling a product that still allows integrators to install it in a dry mounted ceiling configuration. Your Honor, it is indisputable that we could mount our apparatus in 100% of ceilings if properly following the instructions. We had a fully non-infringing drop ceiling mounted configuration that we were marketing at that point. Are you talking about the A or the 910? We're talking about, I was talking about the A. That's why we... Yeah, it could be mounted in a non-infringing way just like the 910 could have also been mounted in a non-infringing way, correct? That is correct. We could mount in three different configurations that were not touched by this original... Let's go one even further. He did a lot of fact-finding and a very clear, cohesive opinion that talked about the 15, 16 inch and so it wasn't just a clear it's capable of but wink, wink, nod, nod, nobody would do it otherwise. There were many reasons the district court laid out as to why the integrators would... it would be much easier for them and they would absolutely be inclined in a practical matter to go the other way, right? Your Honour, the evidence did not show that integrators were more inclined to do this. That was a speculation based off one end user who was never enjoined, who knew about the prohibition and did it anyway. It does not... You knew about the prohibition. What prohibition? The prohibition against the flush mounting configuration, the lone configuration that was enjoined in the original injunction. What prohibition? Did you sell it conditional on it not being installed that way? Did you have a contract with each end user? What do you mean prohibition? Well, we certainly laid out an educational campaign that showed that we were not encouraging or allowing this particular mounting configuration... You were not allowing? How were you enforcing the not allowing? Were there some penalties in the contract if they used it in this way? Well, Your Honour, it would void their warranty for having installed it incorrectly and we therefore found absolute compliance. No integrator installed it in an infringing manner that we knew of. Even at the time of this order, we'll see that there is no integrator installation that is improperly found that is found to have been improper, rather. And so there is no evidence on this appeal record... Well, your friend on the other side would say that's not true. There was at least one that they knew of at the time of the contempt and that they're now, after they're doing the discovery, are finding a whole bunch more. Your Honour, the one example that they talk about is Northern Trust, is the one example in their What We Know Now section. And that one example is a case where this works. The integrator called, sure, and asked whether this was being done correctly. It's before the project went live. You can see from the photographs and the records that there are wires everywhere. And they called and we corrected that installation and told them the proper way to do it. And it is proof that we were policing for this integration. We were seeking to properly... There's still ongoing discovery, which the district court has not considered in terms of the sanctions to impose. So we can't do that fact-finding up here in the first instance, right? Absolutely right. And this is an ongoing proceeding where you've not had any sanctions, no monetary sanctions imposed on you. We don't know what's going on with discovery and we're not the fact-finders in any event. So the question is why we're here at this stage of the game trying to resolve I'm not sure what. Agreed, Your Honour. There is fact-finding continuing as to the sanctions. We are here asking under 1292A for the injunction that is currently overbroad and vague. You didn't appeal the injunction. You didn't appeal it. It may have been overbroad when it was written to the extent it used the word allow integrators to do this. You chose not to appeal. You're stuck with what you chose not to appeal. You had a route for appeal that was legitimate. Now you're coming up on contempt trying to claim there's an interlocutory. I'll tell you, I think your appeal is pretty close to frivolous. Your Honour, I apologize for saying the injunction. I meant the injunction that comes through the contempt order. That new injunction is appealable now, and we did do that timely. It is overbroad as to the three other mounting configurations. It is vague. It's appealable. It's not. This is an interlocutory request. It's not. You don't have a direct route of appeal. You could have appealed to PI. The PI prevented you from selling a product which would allow it to be installed in an infringing way regardless of your intent, regardless of your encouragement, regardless of your instruction manual, regardless of your warranty. You did nothing about that. You didn't appeal that PI. Then you come up with a product that has the most modest of differences. You added a couple flanges on the side, but it can still absolutely and easily be installed in the infringing manner, and there's no dispute about that, that it can be. Thus, you still have a product that allows integrators to install it in a drop ceiling mounting configuration. Do you have anything further? Yes, Your Honor. I would remind the court that our initial, the initial injunction is limited to marketing and selling in a way that encourages and allows. That word allows is what came into the proceedings with an after arising claim construction. That configured for the notion that this is a product that, as long as it can perform it, is within the claim. That is entirely from a rewriting of the claim post-injunction. Shouldn't we believe that the district court who entered the injunction is the one who understands best what the scope of the injunction is? And, Your Honor, the original understanding of this, and especially at the time of the motion for clarification, was that in the first line of that order is that it enjoins the configuration only, not the product itself, in three other mounting configurations. We could continue to sell the MXN-910 and had we chosen to do so, but we took it off the market as a business decision for a revamping of that product so we could capture, again, all four mounting configurations in one product. That was a business choice that we made. It took us four months. As we told the court, it would. And you said we wanted to capture all four mounting configurations. Is that a misstatement by you? One of the four mounting configurations is the drop ceiling mounting configuration. Your Honor, if it is moved down three millimeters, it is now, as the court said, indisputably beyond limitation five. So it was a drop ceiling mounting configuration, just not the flush one. And so we were able to then sell it again for approximately that same purpose and the other three, which were indisputably not, or were carved out of the original injunction. When you talk about your business decisions, are we supposed to just ignore everything you did after the court said it was entering the injunction when you scrambled to sell as much as possible and to tell all of your clients to stock up just because the bond wasn't finalized? Your Honor, we understood the injunction at that time to only include one mounting configuration. If our products were being sold for the pole mount or the hard mount or the wire mount, they could still go out from that point on, even before the bond, even after the bond. If you were so sure that you could keep selling, then why did you tell them all to stock up and to move fast and to stock up on all of this before the bond went into effect? Your Honor, we understand that the integrators typically don't house products for more than one or two months. They had pending jobs. We knew that that bond had not gone into effect. The judge... So you were telling them to stock up on this product. Your Honor, they were... And if you were sure you could sell the product, why would you tell them to do something they don't normally do? Well, we knew that we could continue to sell it. We didn't know what their needs were, and they were able to continue to buy that product and all three other mounting configurations. Okay, you're well beyond your time, and you've used all your rebuttal time. We'll restore a little bit of it. Ms. Rayburn, please proceed. May it please the Court, this Court does not have jurisdiction over this interlocutory appeal because the content order at issue merely interpreted the underlying injunction. There can be no question that the August 2019 injunction order enjoined a specific product in its entirety, and that was the 24-inch version of the MXA 910. Is that what your brief during the bond posting indicated, that you understood the injunction to bar any sale of the MXA 910? Yes, Your Honor. Clear One's brief on bond clearly states that, quote, to comply with the preliminary injunction order, SURE will have to modify its existing MXA 910 product in a way that it makes it impossible for a customer to install the product flush in a drop ceiling grid. So your briefing on bond indicates that you understand the word allow in its plain meaning in a way that they would not be able to sell a product that allowed integrators to do that. Yes, Your Honor, and there is a lack of clarity in the party's briefing on the MXA 910 products generally. What did SURE indicate in its briefing on the bond about its belief regarding whether it could continue to sell the MXA 910 in light of the language in the injunction? SURE told the court that it could not sell the 24-inch MXA 910 at all because SURE, quote, does not control which configuration is used, and presently an integrator may use the same MXA 910 model in each of the four configurations. That's at page 6353. Do you understand that to be inconsistent with the arguments that have been made in this case and today in oral arguments? Yes, Your Honor, very inconsistent. Thank you. Thank you. The court's order in response to both clear ones and SURE's brief, both of which said SURE cannot continue... Don't you agree that they could have appealed this P.I.? They had a directory of appeal. If they really had a problem with the word allow in the first sentence, they could have appealed it, correct? I do agree, Your Honor. And they chose not to, correct? They chose not to, and they offered a plan. They claimed now that they are under an onerous injunction, but they offered a plan that would allow them to use the three allowed configurations without doing the disallowed mounting configuration, and that plan was to sell a smaller version of the MXA 910. A 60-centimeter version of the MXA 910 that they represented to the court would not mount flush because it would fall through. Throughout this entire time... Would it have been acceptable, as Chief Judge Moore suggested to your friend on the other side, for them to contractually impose that requirement on the interceptors? No, Your Honor. To have some punishment or something like that? Is there some way they could do that? No, Your Honor, because this record is peppered with them claiming up and down all the time that they do not know how people install, and they cannot control how people install. And that's right there in Shura's responsive bond brief. At APTX 6353, that's why they said they had to take the 24-inch version off the market, because they could not control how people installed. And the court's order regarding bonds is... Could you file a motion asking us to contemplate whether this brief, as written, was frivolous, as argued given the clear inconsistencies in this brief with their statements to the district court? We seriously considered it, Your Honor, but we chose not to. Well, you can always do it after argument. Thank you, Your Honor. Understood. The court's order regarding the bond amount made very clear that the preliminary injunction acted to enjoin the 24-inch MXA 910. In that order, the court adopted Shura's plan of taking the 24-inch MXA 910 on the market and only accepted Shura's plan of selling the 60-centimeter MXA 910 upon certain conditions. What's your response to your friend on the other side when he says that the after-arising claim construction was actually a game-changer with respect to what allows means? Well, I think my friend on the other side just said that the after-arising claim construction is what gave rise to the word allows in the preliminary injunction, which is not a statement I even know how to respond to. But the court did not apply an after-arising claim construction. There's simply nothing in the contempt order applying... I mean, and this is really puzzling that this is included in this case at all, but what about the argument they're making here on appeal of a contempt order that the claims are indefinite? Did that show its face for the first time after this claim construction? Is that the contention here, that somehow this claim construction... I mean, it's an interesting indefinite disargument. I don't know why we're here talking... or why the briefs are talking about it, but... A couple of responses to that, Your Honour. First, Schur did raise indefiniteness arguments in his opposition to the preliminary injunction order. This is not one of the indefiniteness arguments Schur chose to raise. Schur could have challenged indefiniteness... Well, is it their position? I'm just not familiar enough with the record that went down on claims construction.  or likely arise because of the after-claims construction? No, indefiniteness is indefiniteness, Your Honour. The indefiniteness argument they're raising is that there is a mixed-subject matter claim, and that's from the claim... their argument is based on the claim specification. Didn't they argue to the district court during the claim construction, that a construction... that it was indefinite, that it necessarily should be construed to include user activity? They did. You're right. And so all of this has been argued before any interaction with the preliminary injunction order arose. This is an indefiniteness argument that they did preview in response to a clear one claim construction. The court explicitly stated that he was not ruling on their indefiniteness argument because it was... indefiniteness had not been raised adequately. It was clear one claim construction that was being addressed. But the point is that exact same indefiniteness argument that they previewed during the claim construction, they could have raised in response to the preliminary injunction. But they didn't. And they didn't. And under TEVO, a contempt proceeding does not reopen to reconsideration the legal or factual basis of the order alleged to have been disobeyed. The preliminary injunction order is based on a finding of definiteness, and that is not to be disturbed now. And I do want to respond to the idea that Schur never thought about how clear one's proposed claim construction would work together with the injunction order. Because it's not true. During the briefing on bond in this matter, Schur explicitly asked to be allowed to sell the smaller MXA 910 60cm product despite the injunction against the 24-inch MXA 910 product, arguing that the smaller product was acceptable even under clear one's configured two-claim construction. Schur thus understood how these orders worked together and could have timely appealed the PI order had it seemed fit to do so. And that argument is Schur's sure reply on bond, which is not currently in this court's record, but I do have copies of it. It's at entry 586 of the docket in the underlying case. Okay, anything further? Yes, Your Honor. Really? No, Your Honor. Thank you. Your Honor, I read what clear one wrote on August 7th. Schur will be able to continue to sell MXA 910s for use in other configurations. Accordingly, Schur will not suffer a complete loss of sales of MXA 910s. That is the opposite of what clear one is arguing now. That original injunction was only to one infringing configuration. The court, in its clarification order, wrote the opinion granting the preliminary injunction explained that Schur's MXA 910 conference system clearly infringes on clear one's patent when used in its drop-space mounting configuration. That did not include the pole mount. It did not include the wire mount or the hard ceiling mount. Those could still be sold. But what about your brief during bonding to the court that said you can't control how people install it and that this injunction is so broad it prevents you from selling the MXA 910 altogether. That's what you argued your understanding of this We recognize that we would not be able to carve out and stop those mountings in the infringing configuration while we were still selling the product. But it had not at all entered into our consideration that allow and encourage in the marketing and selling context would take the word allow and add that to design to allow and turn this into a configuration limitation. That was not part of the original injunction understanding. When the court in its contempt order described the initial injunction ten times the court said the enjoined configuration. It only once said the enjoined MXA 910. But ten other times it said enjoined configuration. That was in the contempt order. It understood the prior injunction was limited to one configuration only. And this court has frequently said that you said in your brief clear one suggestion of halting the MXA 910 in one configuration effectively halts sales in all configurations. That's your characterization of the injunction. You're right, Your Honor. We could not know what those downstream integrators were doing. So we chose to take it off the market until we could redesign it. You understood the injunction as prohibiting you from any sales. This wasn't a choice. You represented that this was what the injunction caused you to do. Your Honor, we recognized that the downstream integrators whom we have very little contact with and no way to see into their activities would have this available option and we needed to take it off until we could mount our education campaign and redesign with the flanges for a proper mounting configuration. That shows that we were trying to reasonably comply. Or it shows that you were actually just trying to reasonably comply with the injunction as to that one mounting configuration and thereby we took a hit on all mounting configurations for a period until we could get the new product by December 2019 on the market. That's what we told the court we would do within days. We said four months to get this redesign out for all the mounting configurations again to be non-infringing. Your Honor, if there is no other question we will cede. I thank both counsel for their arguments. The case is taken under submission.